STEBBINS AND HURLEY, AS EXECUTRIX AND EXECUTOR OF THE WILL OF WATKINSON, DECEASED *v.* RILEY, CONTROLLER OF THE STATE OF CALIFORNIA.

ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

No. 227.  Argued March 9, 1925.—Decided April 13, 1925.

1. The California Inheritance Tax Law of 1917, § 2, sub-div. 10, by providing that in determining the market value of the property transferred, for the purpose of fixing the amount of tax, no deduction should be made of the Federal Estate Tax, (assessed upon the whole estate,) resulted in a much larger proportionate tax on the succession to the residuum of an estate when the estate was large than when it was small, though the residuary bequest and

the residuary estate were equal in each instance. *Held* consistent with the due process and equal protection clauses of the Fourteenth Amendment. P. 140.

2. There are two elements in the transfer of a decedent's estate, exercise of the legal power to transmit at death and privilege of succession, and both may be made the basis of classification in a single state taxing statute, so that the amount of tax which a legatee shall pay may be made to depend both on the total net amount of the decedent's estate subject to the jurisdiction of the State and passing under its inheritance and testamentary laws, and the amount of the legacy to which the legatee succeeds under those laws. P. 144.

191 Cal. 591, affirmed.

ERROR to a judgment of the Supreme Court of California sustaining, on review, a judgment of the Superior Court confirming an assessment of inheritance taxes.

*Mr. Carey Van Fleet,* with whom *Messrs. Joseph G. De Forest, Sidney M. Ehrman, Maurice E. Harrison, William M. Madden, Lloyd M. Robbins* and *Luther Elkins* were on the brief, for plaintiffs in error.

*Mr. Ralph W. Smith,* Inheritance Tax Attorney for California, with whom *Messrs. Wesley E. Marten, Dion R. Holm, Arthur W. Brouillett, Erwin P. Werner* and *Adrian C. Stanton* were on the brief, for defendant in error.

*Messrs. Martin Saxe, Samuel P. Goldman, Charles R. McSparren* and *William F. Unger,* filed a brief as *amici curiae* by special leave of court.

MR. JUSTICE STONE delivered the opinion of the Court.

This case is here on a writ of error to the Supreme Court of California to review the determination of that court upholding the constitutionality of the Inheritance Tax Act of the State of California enacted in 1917, particularly Subdivision 10 of § 2 of the Act, which prescribes the

method of determining the market value of the property transferred, for the purpose of fixing the amount of the tax. Subdivision 10 of § 2 reads as follows:

"In determining the market value of the property transferred, no deduction shall be made for any inheritance tax or estate tax paid to the Government of the United States."

The decedent left a gross estate exceeding $1,800,000, on which the federal Estate Tax amounted to the sum of $128,730.08. In fixing the amount of inheritance tax due to the State of California upon the residuary legacies, the state Tax Appraiser, acting pursuant to the provisions of Subdivision 10 of § 2, did not deduct the amount of federal Estate Tax. In consequence the total amount of state tax assessed upon the residuary estate was $26,-205.75 greater than it would have been had the federal Estate Tax been deducted from the residuum of the estate before fixing the amount of the state tax. The Superior Court of San Francisco County having jurisdiction in the premises confirmed the tax, and the Supreme Court of California, on writ of error, held that the tax was in accordance with the laws and the constitution of California and was not a denial of due process or equal protection of the laws under the Fourteenth Amendment of the Constitution of the United States. *Stebbins* v. *Riley,* 191 Cal. 591.

It is urged here that the California Inheritance Tax Act of 1917 is a succession tax; that the provision of the taxing law requiring that there shall be no deduction of the federal tax in fixing the fair value of the legacy on which the state tax is levied is an arbitrary discrimination bearing no relation either to the persons succeeding to the decedent's estate or to the amount which the taxpayer takes by succession, and that it is accordingly a taking of property without due process of law, and, because of the inequalities in the amount of the tax result-

ing from the application of the taxing statute to successions, there is a denial of the equal protection of the laws. On the other hand, it is urged that the so-called " right " of acquiring property by devise or descent, is not a property right but a mere privilege, the creature of state law, and the authority which confers it may impose conditions upon its exercise; that in consequence the State may tax the privilege, discriminating not only between the status of those who inherit and the amounts which they thus acquire, but discriminating likewise between inheritances or legacies of like amount which are transmitted from estates of varying size, if the discrimination is based upon or bears some reasonable relation to the size of the whole estate transmitted on the death of the decedent. In presenting this aspect of the case, it was argued by the appellant, on the one hand, that there was a natural right to inheritance entitled to the protection of the due process clause of the Fourteenth Amendment, and by the appellee, on the other, that the legislative authority could deny wholly the privilege of inheritance and consequently could place unlimited burdens upon it.

There is much in judicial opinion to suggest that a State may impose any condition it chooses on the privilege of taking property by will or descent, or, indeed, that it may abolish that privilege altogether, and, for this reason, that a State is untrammeled in its power to tax the privilege. See *Mager* v. *Grima,* 8 How. 490; *United States* v. *Perkins,* 163 U. S. 625; *Knowlton* v. *Moore,* 178 U. S. 41, at page 55; *Campbell* v. *California,* 200 U. S. 87, at page 94.

But we do not find it necessary to discuss the issue thus raised, for it has been repeatedly held by this Court that the power of testamentary disposition and the privilege of inheritance are subject to state taxation and state regulation and that regulatory taxing provisions, even though they produce inequalities in taxation, do not effect an unconstitutional taking of property, unless, as

was said in *Dane* v. *Jackson,* 256 U. S. 589, 599, the taxing statute " results in such 'flagrant and palpable inequality between the burden imposed and the benefit received, as to amount to the arbitrary taking of property without compensation—' to spoilation under the guise of exerting the power of taxing.' " Citing *Bell's Gap R. R.* v. *Pennsylvania,* 134 U. S. 232, 237.; *Henderson Bridge Co.* v. *Henderson City,* 173 U. S. 592, 615; *Wagner* v. *Baltimore,* 239 U. S. 207, 220.

The subject matter of an inheritance taxing statute may be either the transmission, or the exercise of the legal power of transmission, of property by will or descent, (*United States* v. *Perkins,* 163 U. S. 625, 629; *Plummer* v. *Coler,* 178 U. S. 115, 125; *New York Trust Co.* v. *Eisner,* 256 U. S. 345), or it may be the legal privilege of taking property by devise or descent (*Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283; *Knowlton* v. *Moore,* 178 U. S. 41; *Campbell* v. *California,* 200 U. S. 87.)

Even assuming that a State does not, under the Constitution of the United States, possess unlimited power to curtail the power of disposition of property at death or the privilege of receiving it by way of inheritance, there is nevertheless no constitutional guarantee of equality of taxation. The power of the States to discriminate in fixing the amount and incidence of taxation upon inheritances is undoubted. A State may levy a tax upon the power to dispose of property by will, graduated by the size of the legacy, and it may grant exemptions. See *Plummer* v. *Coler, supra; Keeney* v. *Comptroller of N. Y.,* 222 U. S. 525. It may discriminate between property which has not borne its full share of taxation in the testator's lifetime and other property passing to the same class of transferees. *Watson* v. *State Comptroller,* 254 U. S. 122. It may fix a graduated succession tax, even though the amount of tax assessed does not vary in pro-

portion to the amount of the legacy received by persons of the same class. *Magoun* v. *Illinois Trust & Savings Bank, supra.* It may fix a succession tax which imposes a tax upon inheritances to brothers and sisters and not on those to daughters-in-law and sons-in-law. *Campbell* v. *California, supra.*

The guarantee of the Fourteenth Amendment of the equal protection of the laws is not a guarantee of equality of operation or application of state legislation upon all citizens of a State. As was said in *Magoun* v. *Illinois Trust & Savings Bank, supra,* at page 293:

" It only prescribes that that law have the attribute of equality of operation, and equality of operation does not mean indiscriminate operation on persons merely as such, but on persons according to their relations. In some circumstances it may not tax A more than B, but if A be of a different trade or profession than B, it may. . . . In other words, the State may distinguish, select and classify objects of legislation, and necessarily this power must have a wide range of discretion."

The taxing statute may, therefore, make a classification for purposes of fixing the amount or incidence of the tax, provided only that all persons subjected to such legislation within the classification are treated with equality and provided further that the classification itself be rested upon some ground of difference having a fair and substantial relation to the object of the legislation. *Magoun* v. *Illinois Trust & Savings Bank, supra; F. S. Royster Guano Co.* v. *Virginia,* 253 U. S. 412.

" It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries, and the property of charitable institutions. It may impose different specific taxes upon different trades and professions, and may vary the rate of excise upon various products; it may tax real estate and personal property in a different manner; it may tax visible property only,

and not tax securities for payment of money; it may allow deductions for indebtedness, or not allow them. All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the state legislature, or the people of the State in framing their Constitution." *Bell's Gap R. R.* v. *Pennsylvania,* 134 U. S. 232, at p. 237.

It is not necessary that the basis of classification should be deducible from the nature of the thing classified. It is enough that the classification is reasonably founded in the "purposes and policies of taxation." *Watson* v. *Comptroller,* 254 U. S. 122. It is not open to objection unless it precludes the assumption that the classification was made in the exercise of legislative judgment and discretion. *Campbell* v. *California, supra.*

Unquestionably the operation of Subdivision 10 of § 2 of the California Inheritance Act of 1917 now under consideration may result in inequalities in the incidence of taxation. The requirement that the federal Estate Tax shall not be deducted in fixing the state Inheritance Tax imposes a much larger proportionate tax on the succession to a residuum of a large estate than a smaller estate, although the residuary estate and the residuary legacy be equal in each instance.

The plaintiffs in error base their argument that this is a denial of the equal protection of the laws on the assumption that the California Inheritance Tax must be dealt with exclusively as a tax upon succession, and that, since the privilege of receiving residuary legacies of like amounts by persons of like relationship is subjected to unequal taxation, the inequality depending upon the size of the estate from which the legacy is received, there is an arbitrary discrimination and a denial of the equal protection of the laws. It is true that the inheritance tax law of California in force before the adoption of the law of 1917 repealing it, was held by the Supreme Court of

California to be a succession tax. *Estate of Miller*, 184 Cal. 674. That statute contained no express provision prohibiting the deduction of federal estate taxes before fixing the state tax on legacies, and that court held, adopting the principle of construction applied in *Knowlton* v. *Moore, supra*, that the true effect of the California Inheritance Tax Act, being that of a tax on succession, the federal tax must be deducted in order to determine the amount on which the state tax should be based. It is true, too, that the California Inheritance Tax Act of 1917 provides for a graduated tax dependent upon the size of the legacy and discriminates between different classes of persons receiving the legacy; provisions which are characteristic of laws levying the tax upon successions. But § 2 of that Act expressly imposes the tax " upon the *transfer* of any property " of the character described in the Act, and Subdivision 3 of § 1 of the Act provides that the word " transfer " as used in this Act shall be "taken to include the passing of any property or any interest therein " in the manner provided in the Act. Subdivision 10 of §. 2, which is new, in its practical operation, makes the amount of the tax dependent to some extent upon the amount of the decedent's estate which passes, since the federal Estate Tax which under that provision may not be deducted in fixing the state tax is assessed upon the whole estate. To that extent the statute establishes a classification based on the amount of the estate passing under the power of disposition at the time of death, as well as the classification, based upon the amount of the legacy received, contained in other provisions of the taxing law.

There are two elements in every transfer of a decedent's estate; the one is the exercise of the legal power to transmit at death; the other is the privilege of succession. Each, as we have seen, is the subject of taxation. The incidents which attach to each, as we have observed,

may be made the basis of classification.. We can perceive no reason why both may not be made the basis of classification in a single taxing statute, so that the amount of tax which the legatee shall pay may be made to depend both on the total net amount of the decedent's estate subject to the jurisdiction of the State and passing under its inheritance and testamentary laws and the amount of the legacy to which the legatee succeeds under those laws. Such a classification is not, on its face, unreasonable. The discrimination is one which bears a substantial relationship to the exercise of the power of disposition by the testator. It is one of the elements in the transfer which is made the subject of taxation. The adoption of the discrimination does not preclude the assumption that the legislature, in enacting the taxing statute, did not act arbitrarily or without the exercise of judgment or discretion which rightfully belong to it, and we can find in it no basis for holding the statute unconstitutional.

It is urged by appellants that the decision of this Court in *Knowlton* v. *Moore, supra,* is in conflict with the conclusion here reached. We do not so read the opinion in that case. It was there held that an act of Congress fixing a graduated tax upon legacies was within the taxing power of the United States. In construing that law, however, the question arose whether the progressive rate of tax which it imposed upon legacies or distributive shares of decedent's estate, should be measured, not separately by the amount of each legacy or distributive share, but by the total amount of the estate transmitted. This Court held that inasmuch as the statute laid down no express rule determining the question, it would adopt the construction which produced the least inconvenience and inequality to taxpayers, and that the tax should therefore be measured and apportioned according to the amount of each individual legacy rather than the amount of the whole estate. The question was one of construction only

and not of constitutional power. Here the construction of the taxing act is not open to question. Its meaning and application have been determined by the Supreme Court of California and by its determination we are bound. We hold that in enacting it the legislature did not exceed its constitutional power.

*Affirmed.*