TERRELL, Justice.
This suit was brought by Florida State' Board of Optometry against Martin R. Weber, a naturopathic physician. The •complaint prayed for an interpretation of Chapter 463, F.S.A., that naturopathic physicians be required to secure a license to practice optometry in this State and that Dr. Weber be enjoined from practicing optometry until he complies with Chapter 463, F.S.A. Dr. Weber answered the complaint ■admitting that he was not licensed to practice optometry under Chapter 463, F.S.A. hut alleged that he was qualified to do so because he was licensed as a naturo-path under Chapter 462, F.S.A. and that the exemption to “physicians” under Section 463.08, F.S.A. included and authorized him to practice optometry.
The State Board of Naturopathic Examiners were permitted to intervene and adopt the answer of Dr. Weber as their answer to the complaint. March 26, 1953, the plaintiff moved for final decree. on complaint and answer which motion was repeatedly delayed until February 16, 1954, when it was set for hearing on a day certain, but shortly prior to date of hearing counsel for defendant notified counsel for plaintiff that a consent final decree would be agreed to by the parties as prayed for in the complaint. The hearing was accordingly postponed for counsel to prepare the final decree and the written consent to be approved and entered of record. The final decree and the written consent were approved and signed by counsel for both parties and transmitted to Dr. Weber who promptly refused to approve and sign them. The case was then set for hearing on the motion for final decree on complaint and answer. April 19, 1954, final decree was entered as prayed for in the bill of complaint. This appeal is from the final decree.
The- point for determination is whether or not a duly licensed naturopathic physician under the law oLthis state is by virtue of such license authorized to practice optometry without first procuring a license to do so.
It is admitted that the answer to this question turns on the ‘interpretation of Section 463.08, F.S.A. ás follows:
“It shall be unlawful for anyone to practice optometry in the state without first procuring a certificate of registration and license as a registered optometrist in accordance with the provisions of this law. However, the terms and provisions of this law shall not require those now holding certificates of registration and license as registered optometrist to further be examined; and provided, that the terms and provisions of this law shall not apply to physicians duly licensed to practice under the laws of the State of Florida'
Appellant contends that naturopathy is recognized as one of the healing arts under the law of'Florida, that, he is a regularly licensed naturopathic physician, and that consequently he is a “physician” as contemplated by the italicized part of the proviso to the quoted statute and is therefore exempt from the requirement of a license to practice optometry. He further contends that State ex rel. Turner v. Baltzell, 144 Fla. 278, 197 So. 783; Bragg v. State, 134 Ala. 165, 32 So. 767, 58 L.R.A. 925; People ex rel. Gage v. Siman, 278 Ill. 256, 115 N.E. 817; In re Complaint of Melser for Declaratory Decree and Judgment, 160 Fla. 333, 32 So.2d 742 and State Department of Public Welfare v. Melser, Fla., 69 So.2d 347, support his contention.
The chancellor' found that the word “physicians” as used in the proviso to Section 463.08, F.S.A. did not include licensed naturopaths and enjoined appellant from practicing optometry conditioned on securing a license under Chapter 463, F.S.A. The chancellor bottomed his decision on the theory that Chapter 3881, :Acts of 1889, as subsequently" amended and as now embraced in Chapter 458, F.S.A. Created the *410 State Board of Medical Examiners and authorized them to examine and license those who successfully passed the examination to practice medicine.
It was also the chancellor’s view that Chapter 458, F.S.A. had to do with examining and licensing allopaths and homeopaths and could not have contemplated those engaged in the practice of naturop-athy because Chapter 5947, Acts of 1909, now Chapter 463, F.S.A. regulating the practice of optometry contains the following exemptions:
“Sec. 11. Nothing in this Act shall be construed to apply to physicians and surgeons authorized to practice under the laws of Florida, nor to dealers in optical goods who sell spectacles, er eye-glasses, without attempting to traffic upon skill in adapting them to the eye.”
Eighteen years subsequent to the enactment of Chapter 5947, Acts of 1909 regulating the practice of optometry the legislature recognized naturopathy as one of the healing arts and enacted Chapter 12286, Acts of 1927, now Chapter 462, F.S.A. defining naturopathy and providing for the licensing of naturopathic physicians. An examination of Section 463.01 defining optometry and 462.01 defining naturopathy reveals few if ány attributes or requirements common to the two fields of healing. It is not questioned that both have an important place as healing arts, so did bleeding, sassafras tea and “herbs” have an important place in the primative art of healing but they have long since been relegated to the discard. It has been the practice of the legislature in this State to recognize each of the healing arts as they show reason for their place in the sun and to pass laws defining their scope, regulating, the practice of each and authorizing rules of conduct to govern them. Each has appliances, instrumentalities and codes of conduct peculiar to itself, which are well defined and recognized. We think the chancellor was correct in holding that naturo-paths were not “physicians” as contemplated by Section 463.08, F.S.A. and in thereby refusing to exempt naturopaths from the requirement of securing a license to practice optometry.
In so holding we do not overlook State Department of Public Welfare v. Melser heretofore cited. This case held that there was a clear distinction between naturopaths and other practitioners of the different healing arts. Other cases recognize the distinction and support the conclusion reached here. Perry v. Larson, 5 Cir., 104 F.2d 728; Millsap v. Alderson, 63 Cal.App. 518, 219 P. 469; Williams v. Capital Life & Health Ins. Co., 209 S.C. 512, 41 S.E.2d 208 and In re Gerber, 57 Cal.App. 141, 206 P. 1004. In historical perspective an examination of these decisions and the acts of the legislature defining and regulating the different healing arts reveals no support for the contention that appellant was a physician as contemplated by Section 463.08, F.S.A.
It is not denied that Dr. Weber has the background and training as a naturopath and optometrist, that practitioners of both arts are licensed under the law of Florida, that the optometrist is required to take a four-year course of study before being admitted to practice and even at that, he is not permitted to administer drugs and his profession is not recognized as one of the healing arts, that a naturopath is required to pass the basic science examination, but despite all of this the legislature has recognized each branch of healing as a separate entity, each has its own board and governing regulations, each has attributes and requirements as to qualification and practice peculiar to itself which the legislature has" recognized and in its wisdom has authorized the enforcement of as a prerequisite to practice in this State.
'In view of the conclusion we have reached, other questions become immaterial, so the decree appealed from is affirmed.
Affirmed.
ROBERTS, C. J., and THOMAS, SE-BRING, MATHEWS and DREW, JJ., concur.
HOBSON, J., not participating.